UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD FELTON,

    Petitioner,        Civil No. 05-CV-10076
                  Honorable David M. Lawson
v.

KENNETH MCKEE,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

  The petitioner, Gerald Felton, presently confined at the Richard A. Handlon Correctional Facility in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed *pro se,* the petitioner challenges his convictions for first-degree murder, Mich. Comp. Laws § 750.316, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, contending that his trial and appellate counsel were ineffective and the prosecution failed to disclose evidence that the defense could have used to impeach a key prosecution witness. The respondent has filed a response to the petition. The Court finds that the petitioner's claims lack merit and therefore will deny the petition.

I.

  Dejuan Betts, an acquaintance of the petitioner, was shot to death on January 23, 1998. The prosecution's theory was that after Betts won approximately $250 from the petitioner during a card game, the petitioner tracked Betts down, shot him to death, and took back the $250 Betts had won from him. The petitioner's version was that he witnessed two unknown individuals in a white vehicle shoot Betts to death while Betts was riding his bicycle from the card game.

At trial in the Wayne County, Michigan circuit court, Randy Johnson testified that he hosted the card game on January 23, 1998. He testified that Betts won $250 from the petitioner and the petitioner left his home approximately 15 minutes before Betts departed. After Betts left, the petitioner returned to the home asking to use Johnson's phone, but Johnson was using the phone so the petitioner left again. Johnson said that a short time later, the petitioner telephoned him and asked whether the individuals who had shot Betts had been caught. The petitioner stated that he had seen Betts speaking to some individuals in a white Pontiac Grand Am, and then saw the individuals shoot Betts.

The petitioner was arrested on the same day as the shooting. He gave a custodial statement to police officer Monica Childs. The petitioner's statement was the subject of a suppression hearing prior to trial conducted under the state procedure outlined in *People v. Walker (On Rehearing)*, 374 Mich. 331, 132 N.W.2d 87 (1965). The trial court determined that the statement was admissible. Police officer Monica Childs testified that the petitioner stated that he lost $30 to Betts in a card game. He tracked Betts down after the game because he was going to ask Betts if he could borrow the money he lost. The petitioner reported that Betts became angry and pulled a gun on the petitioner. The two got into a scuffle over the gun, which, according to the petitioner, accidentally discharged. The petitioner then panicked and ran.

The jury found the petitioner guilty of first-degree premeditated murder and possession of a firearm during the commission of a felony. On September 16, 1998, he was sentenced to life imprisonment without parole for the murder conviction, to be served consecutively to two years imprisonment for the felony-firearm conviction.

The petitioner filed an appeal of right in the Michigan Court of Appeals in which he argued: (i) his confession was improperly admitted; (ii) irrelevant bad acts evidence was improperly admitted; (iii) the trial court improperly excluded his earlier exculpatory statement to police; (iv) crime scene photographs were improperly admitted; (v) the trial court erred by excluding testimony of a postman; and (vi) the life sentence violates the Michigan Constitution and constitutes cruel and unusual punishment. The petitioner filed a *pro se* motion to remand so he could file a motion for a new trial based upon newly discovered evidence that police officer Monica Childs had given false testimony at an unrelated police board hearing and for an evidentiary hearing based upon his new claims of ineffective assistance of counsel. The Michigan Court of Appeals denied the motion, *People v. Felton*, No. 215918 (Mich. Ct. App. Oct. 11, 2000), and later affirmed the petitioner's convictions. *People v. Felton*, No. 215198 (Mich. Ct. App. June 5, 2001).

The petitioner filed an application for leave to appeal in the Michigan Supreme Court presenting the claims presented to the Michigan Court of Appeals both through counsel and in his *pro se* motion for remand. The Michigan Supreme Court denied leave to appeal. *People v. Felton*, 464 Mich. 966 (Mich. March 22, 2002).

The petitioner then filed a motion in the trial court seeking a new trial based upon his claims of newly discovered evidence and ineffective assistance of counsel related to police officer Monica Child's false testimony. The petitioner also filed a motion for relief from judgment presenting the following three claims: (i) his confession was the product of an illegal arrest and therefore was inadmissible; (ii) appellate counsel was ineffective in failing to preserve a claim of prosecutorial misconduct; and (iii) the prosecutor failed to disclose evidence that the defense could have used to impeach a key prosecution witness. On March 28, 2003, the trial court issued an opinion construing

the motion for a new trial as a motion for relief from judgment and denied the motion. *People v. Felton*, No. 98-02004 (Wayne County Third Circuit Court March 28, 2003). The trial court did not address any of the claims raised in the petitioner's motion for relief from judgment.

The petitioner filed applications for leave to appeal in both Michigan appellate courts claiming that he had been denied the effective assistance of trial and appellate counsel and the prosecutor withheld impeachment evidence. Both state courts denied leave to appeal. *People v. Felton*, No. 249161 (Mich. Ct. App. Dec. 2, 2003); *People v. Felton*, 471 Mich. 894 (Mich. Ct. App. Oct. 25, 2004).

The petitioner now seeks habeas corpus relief on the following grounds:

I. Whether petitioner was denied his Fifth, Sixth, and Fourteenth Amendment constitutional rights to the effective assistance of counsel when his trial attorney and appellate attorney both failed to litigate a meritorious and outcome-determinative Fourth Amendment violation in advance of petitioner's trial and during his direct appeal.

II. Whether petitioner was denied his constitutional right to the effective assistance of appellate counsel when his appellate counsel failed to litigate during his direct appeal preserved claims regarding the prosecutor vouching for the credibility of a critical police witness. Thus [sic], depriving petitioner of his constitutional right to a meaningful and complete appeal as of right and in violation of his due process right to appeal.

III. Whether petitioner was deprived of due process of law and his right to a fair trial when the state failed to disclose impeachment evidence to the defense in advance of the trial regarding a key state's witness, (Det. Childs), had previously committed perjury during a previous suppression hearing and who had a pending theft charge lodged against her during the petitioner's trial. Thus [sic], violation of his Fifth, Sixth, and Fourteenth Amendment constitutional right.

The respondent has filed an answer to the petition arguing that all of the petitioner's claims are barred from review in this Court because they are procedurally defaulted.

II.

The respondent argues that the state court's determination that the petitioner violated the state procedural rules – thereby forestalling consideration of the merits of his federal constitutional claims – constitutes an independent and adequate ground under state law that this Court may not overturn. This procedural default occurred, the respondent insists, because the petitioner's claims were presented for the first time on collateral review, and on collateral review the state courts relied upon a clearly established state procedural rule in denying his claims.

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 752, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required his to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001), *cert. denied*, 536 U.S. 947 (2002); *see also Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992).

Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground[] only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson*, 94 F.3d at 202. Whether the independent state ground is adequate to support the judgment is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

If the last state court from which the petitioner sought review affirmed the conviction both on the merits and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. *Rust*, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The respondent argues that because the petitioner's habeas claims were presented for the first time on collateral review in state court, they are procedurally defaulted. The Michigan Supreme Court denied leave to appeal in the post-conviction motion proceeding on the ground that the petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *Felton*, No. 125338. The Michigan Court of Appeals denied leave to appeal for the same reason.

*Felton*, No. 249161. The respondent argues that the Michigan appellate courts' reliance on Michigan Court Rule 6.508(D) establishes procedural default.

>Rule 6.508(D) applies to motions for relief from judgment, and states:
>
>(D) Entitlement to Relief. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion
>
>(1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;
>
>(2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;
>
>(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>
>(a) good cause for failure to raise such grounds on appeal or in the prior motion, and
>
>(b) actual prejudice from the alleged irregularities that support the claim for relief . . . .

Mich. Ct. R. 6.508(D).

"Although 6.508(D)(1), (2), and (3) list specific procedural grounds for denying a defendant relief from judgment, these procedural grounds are not the exclusive grounds for which a court may deny relief pursuant to M.C.R. 6.508(D)." *Abela v. Martin*, 380 F.3d 915, 922 (6th Cir. 2004). Thus, where the Michigan Supreme Court references only M.C.R. 6.508(D) generally as a basis for denying leave to appeal, that reference, without more, is insufficient to establish that the court denied leave to appeal based upon a procedural ground. *Ibid.* However, where other "clarifying indicators" clearly demonstrate the state court's intention to invoke an "independent and adequate state procedural rule" by its general reference to Rule 6.508(D), a federal court may determine that federal habeas review is barred. *Id.* at 923-924. Other "clarifying indicators" include lower state

courts specifically invoking a procedural bar. *Id.* at 923. In this case, the trial court denied the petitioner's first claim because it had already been presented and denied on direct review. The trial court's reliance on *res judicata* to deny this claim does not amount to a procedural default. *Lundgren v. Mitchell*, 440 F.3d 754, 777 (6th Cir. 2006). The trial court failed to address the petitioner's other claims presented in the present habeas petition although they were presented in his motion for relief from judgment, and it did not clearly invoke a procedural bar in denying those claims. *People v. Felton,* No. 98-02004 (Third Judicial Circuit Court March 28, 2003). Therefore, the Court finds that the Michigan Supreme Court's general reliance on Mich. Ct. R. 6.508(D) is insufficient to establish procedural default. The Court will address the merits of the petitioner's claims.

### III.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, which govern this case, "circumscribe" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) ( internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11; *see also Eady v. Morgan*, 515 F.3d 587, 594-96 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

In his first claim for habeas corpus relief, the petitioner argues that he was deprived of the effective assistance of trial and appellate counsel when both attorneys failed to litigate a Fourth Amendment claim. The petitioner was arrested while in his home, apparently without a warrant. Following his arrest, he gave a confession to police detective Monica Childs. The petitioner argues that his attorneys should have challenged the admissibility of the confession on the ground that it was the product of an illegal arrest. The petitioner's trial attorney challenged only the voluntariness of the petitioner's second statement to police by filing a motion to suppress the statement.

The petitioner argues that the arrest was illegal because he was arrested without a warrant or probable cause. Although a federal court on habeas review generally will not reach the merits of a Fourth Amendment claim under the rule of *Stone v. Powell*, 428 U.S. 465, 481-82, 494 (1976) (holding that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial"), the Court will consider such a claim when it forms the basis for an ineffective assistance of counsel claim.

To prove that counsel were ineffective, the petitioner must establish that his attorneys' performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if counsel's representation falls below an "objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

"Counsel could not be unconstitutionally ineffective for failing to raise these meritless arguments." *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999). Although the Fourth Amendment prohibits police from effecting a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest, *Payton v. New York*, 445 U.S. 573 (1980), the Fourth Amendment issue that the petitioner would have counsel raise is governed by *New York v. Harris*, 495 U.S. 14 (1990). In that case, the Supreme Court declined to suppress a suspect's statement taken outside his

home after a warrantless arrest where the police had probable cause to effectuate the arrest. The Court reasoned:

> [S]uppressing Harris' statement taken outside the house would not serve the purpose of the rule that made Harris' in-house arrest illegal. The warrant requirement for an arrest in the home is imposed to protect the home, and anything incriminating the police gathered from arresting Harris in his home, rather than elsewhere, has been excluded, as it should have been; the purpose of the rule has thereby been vindicated.

*Id.* at 20.

The petitioner presented the claim that his confession was the product of an illegal arrest on direct review to the Michigan Court of Appeals. That court held that the petitioner failed to show that the police lacked probable cause to arrest him and that his confessions were made voluntarily at the police station. Because the exclusionary rule was not designed to protect statements made outside a suspect's premises where police had probable cause for the arrest, the Michigan Court of Appeals held that the statement was not subject to exclusion even if the arrest was illegal. *Felton*, slip op. at 2.

In this case, the petitioner's ineffective assistance of counsel claim cannot succeed because the petitioner has not suggested any meritorious argument counsel should have advanced in state court at the trial or appellate level. First, the petitioner has failed to show that the arrest was illegal or that the state court's conclusion that probable cause existed was contrary to or an unreasonable application of Supreme Court precedent. Second, he has failed to show that the state court's conclusion that the statement was not subject to exclusion regardless of the legality of the arrest was contrary to or an unreasonable application of Supreme Court precedent.

Other than a conclusory statement that the police lacked probable cause to arrest him, the petitioner has not offered an explanation as to how the Michigan Court of Appeals finding that

probable cause was not lacking was incorrect. Police officer Richard Ivy testified that, based upon information received from people at the scene of the shooting, the petitioner became a suspect in the case. He telephoned the petitioner who admitted to being present at the shooting. The petitioner told Ivy that he saw a white vehicle pull up, its occupants begin shooting at the victim, and that the petitioner began firing at the white vehicle in an attempt to protect his friend. Based upon this information, officer Ivy determined that the petitioner should be arrested for questioning. The Court concludes that this information provided probable cause to arrest the petitioner.

The Court concludes that counsel was not ineffective for failing to raise the Fourth Amendment claim because the claim was without merit. *See Kimmelman v. Morrison*, 477 U.S. 365, 374-75 (1986) (holding that when an ineffective assistance of claim is premised on an allegation of failure to pursue a Fourth Amendment claim, it must first be proven that the Fourth Amendment claim is meritorious). Habeas relief is not warranted on this claim.

B.

In his second claim for habeas corpus relief, the petitioner argues that appellate counsel was ineffective for failing to argue on appeal that the prosecutor improperly vouched for the credibility of a crucial prosecution witness, Monica Childs.

To determine whether counsel was ineffective in failing to raise this claim on appeal, the Court considers the merits of the omitted claim. "Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982).

The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The petitioner contends that the prosecutor improperly vouched for witness Monica Childs when the prosecutor made the following statement in her rebuttal closing argument:

> What he [defense counsel] is saying now is that Monica Childs would come in here, risk a criminal charge of perjury, risk her job and her pension, all for a made up statement that does not even make out First Degree Murder, . . . Now if she was going to risk all that, wouldn't you think she'd make up a statement where she'd just flat [be able to prove first-degree murder]?

Trial Tr., Vol. III, 106-07.

The prosecutor's argument was made in response to defense counsel's closing argument in which he accused Officer Childs of drafting the confession without the petitioner's input and essentially deceiving him into signing it. Defense counsel posited that such a scenario would relieve Officer Childs and her fellow officers of having to investigate the crime.

"'Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness.'" *United States v. Trujillo*, 376 F.3d 593, 607 (6th Cir. 2004) (quoting *United States v. Martinez*, 253 F.3d 251, 253-54 (6th Cir. 2001)). The prosecutor did no such thing here. She merely responded to defense counsel's argument by pointing to other factors that militated against the witness's motive to falsify her testimony. The state prosecutor did not place the prestige of the prosecutor's office behind Officer Childs with the quoted argument.

The petitioner's prosecutorial misconduct allegation has no merit; therefore appellate counsel was not ineffective by failing to raise it on appeal.

C.

Finally, the petitioner argues that the state failed to disclose evidence that the petitioner could have used to impeach key prosecution witness Monica Childs. The petitioner offers evidence that before his trial, Childs accused her superiors of asking her to perjure herself in an unrelated criminal trial, and that as a result of the pressure from her superiors she testified falsely during a 1996 suppression hearing in another case. The petitioner argues that the prosecution also should have informed him that a theft charge was pending against Officer Childs at the time of his trial.

The petitioner attaches seven newspaper articles describing Officer Childs's allegations against her superiors. The articles date back to February 27, 1997. According to newspaper accounts, on January 10, 1997 Officer Childs informed her superiors that Inspector Joan Ghougoian asked her to lie about how confessions were obtained from two suspects in the slaying of an eleven-year-old boy, James White. Childs purportedly told her supervisors that Ghougoian obtained the confessions by making illegal promises to the suspects. Ghougoian then asked Childs to omit Ghougoian's role in obtaining the confessions. Ghougoian's conduct resulted in the prosecutor's office dropping charges against one of the suspects in the boy's death. A newspaper also reported that a Detroit Recorders court judge suppressed the confession of two suspects in two other, separate cases based upon Ghougoian's conduct in obtaining the confessions. The petitioner maintains that the prosecutor should have apprised him of Officer Childs' admission that she lied during the unrelated suppression hearing because he would have used that information to impeach her credibility.

The petitioner also argues that the prosecutor should have informed the defense that Officer Childs was charged with a felony in September 1998. In support of this claim, the petitioner has

attached to his petition a copy of an article purportedly from the September 9, 1998 issue of the *Detroit Free Press* reporting that Detective Childs was charged in state court on September 8, 1998 with a felony for allegedly failing to return a violin to a music store. There is no evidence that any conviction resulted from the incident.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that a prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "[I]t is well settled that this disclosure obligation includes evidence that could be used to impeach the credibility of a witness." *Schledwitz v. United States*, 169 F.3d 1003, 1011-12 (6th Cir. 1999). However, "there is no *Brady* violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to him from another source." *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000).

The newspaper articles that the petitioner has submitted do not contain the fodder for impeachment that he believes. Nowhere do they indicate that Childs lied under oath or committed official misconduct. Rather, they portray her as a whistle blower who implicated another homicide detective in the Detroit Police Department. According to these newspaper accounts, Childs reported another detective's indiscretion to her superiors and notified her superiors that her boss had urged her to lie about an interrogation. Childs's decision to disclose her boss's conduct can only be

characterized as a commitment to the truth even when filing a complaint against her supervisor damages her own career. The Court does not see how that information would have been helpful to the defense. Certainly the Court's confidence in the outcome of the trial is not undermined by the prosecutor's failure to disclose information related to Childs' conduct testimony in different case.

The petitioner also claims the prosecutor violated *Brady v. Maryland* by not disclosing an impending felony charge filed against Officer Childs for failure to return a rented violin. According to a newspaper report attached to the petition, the felony charge against Childs was filed on September 8, 1998. The jury returned its verdict in this case on August 12, 1998. The petitioner provides no evidence to support a finding that the prosecutor was aware of or should have been aware of these charges prior to or during the petitioner's trial. Moreover, there is no evidence that a conviction resulted from the charges. Evidence of arrests by themselves may not be used under Michigan law to impeach a witness's credibility. *See* Mich. R. Evid. 609. Nor can the Court conclude that Childs' failure to return a rented violin would have amounted the kind of conduct that would have been "probative of truthfulness or untruthfulness" for which Childs could have been questioned on cross-examination. *See* Mich. R. Evid. 608(b). Moreover, it is unlikely that the information would have impacted the jury's verdict in this case.

### IV.

The Court concludes that the petitioner has not established that he is in the State of Michigan's custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt. #1] is

**DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated: March 26, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 26, 2008.

                s/Felicia M. Moses
                FELICIA M. MOSES